UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:15CV-131-JHM

FRUIT OF THE LOOM, INC., ET AL.                    PLAINTIFFS

V.

RUSTON B. ZUMWALT                                  DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on a motion by Defendant, Ruston B. Zumwalt, to dismiss the Verified Complaint filed by Plaintiffs, Fruit of the Loom, Inc. and Russell Brands, LLC, for lack of personal jurisdiction, or alternatively, a motion to transfer the action to the United States District Court for the Northern District of Oklahoma.  [DN 20]  Fully briefed, this matter is ripe for decision.

## I.  BACKGROUND

Plaintiff, Ruston B. Zumwalt, is a resident of Owasso, Oklahoma.  From April 2010 through September 15, 2015, Zumwalt was employed as a salesman by Russell Brands, LLC, an operating company of Fruit of the Loom.  Both Fruit of the Loom and Russell Brands are Delaware limited liability companies with their principal place of business in Bowling Green, Kentucky.  During his tenure as salesman, Zumwalt sold Russell Brands' athletic and Bike products in Oklahoma and south central Kansas.  Zumwalt was Russell Brands' sole representative in the territory.  During his five-year employment, Zumwalt traveled to Kentucky as part of his job duties with Russell Brands for national sales meetings.  Zumwalt had access to sensitive and proprietary information concerning Fruit of the Loom and Russell Brands,

including customer lists and contact information, account information, sales figures, merchandising and sales strategies, product pricing, and sales practices and policies.

On May 27, 2015, Zumwalt signed a Trade Secrets and Non-Competition Agreement (the "Agreement"). The Agreement was generated in Kentucky and signed by Zumwalt in Oklahoma. The parties to the Agreement were Zumwalt and Fruit of the Loom. In Section 7 of the Agreement, the parties stipulated that the Agreement "shall be construed according to the laws of the Commonwealth of Kentucky, without regard for its conflicts of laws principles." Zumwalt signed the Agreement in exchange for participation in Fruit of the Loom's 2015 Sales Incentive Program which awarded "bonus" compensation to Fruit of the Loom sales personnel based on their performance during the year. In Section 11 of the Agreement, Zumwalt acknowledged that participation in the 2015 Sales Incentive Program was "good and valid consideration" for his promises in the Agreement, "whether or not a bonus [was] actually earned under the Program."

In Section 1 of the Agreement, Zumwalt promised during and after his employment "not to disclose Confidential Information or Trade Secrets to third parties, or to use Confidential Information or Trade Secrets on behalf of third parties." In Section 5(a)(i) of the Agreement, Zumwalt promised that for a period of 12 months after termination of his employment, he would not solicit or participate in soliciting any Covered Customer, directly or indirectly, to purchase products from a competitor, or to decrease its level of business with Fruit of the Loom or Russell Brands. Further, in Section 5(a)(ii) of the Agreement, Zumwalt promised that for a period of 12 months after termination of employment, he would not directly or indirectly work or provide services for a competitor.

In September of 2015, Zumwalt announced his intent to resign his position with Russell

Brands and go to work for BSN Sports, a competitor of Fruit of the Loom.  On September 15, 2015, Zumwalt's attorney sent Fruit of the Loom a letter stating that the non-competition provision in the Agreement is "void and cannot be enforced" under Oklahoma law.  The letter also informed Fruit of the Loom that Zumwalt "[w]ould not use or disclose any confidential or trade secret information" to any third party.  On September 28, 2015, Zumwalt began working for BSN Sports.

Plaintiffs filed suit on October 23, 2015, alleging breach of the non-competition and the non-solicitation provisions and injunctive relief based on both provisions.  On November 4, 2015, Zumwalt filed this motion to dismiss for lack of personal jurisdiction, or alternatively, to transfer the action to the United States District Court for the Northern District of Oklahoma.

## II. MOTION TO DISMISS

The Court will first address Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  The burden is on Plaintiffs to demonstrate that jurisdiction exists.  See Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991).  To make such a showing, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  Id.  Further, when presented with a Rule 12(b)(2) motion, "the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  Id. (citation omitted).

Plaintiffs have not sought an evidentiary hearing.  In his reply, Defendant suggests that if the Court found that there were issues of disputed facts related to personal jurisdiction which require resolution at an evidentiary hearing, the parties could address these issues at the time presently scheduled for the preliminary injunction hearing. Plaintiffs filed suit on October 23,

2015, alleging breach of the non-competition and the non-solicitation provisions and injunctive relief based on both provisions.  On November 4, 2015, Zumwalt filed this motion to dismiss for lack of personal jurisdiction, or alternatively, to transfer the action to the United States District Court for the Northern District of Oklahoma.  The Court does not believe the matter requires a hearing.     If the Court determines the jurisdictional issue on written submissions only, the plaintiff "need only make a prima facie showing of jurisdiction." Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). When making such a determination without an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." Id.  Furthermore, the court must "not consider facts proffered by the defendant that conflict with those offered by the plaintiff." Neogen Corp. v. Neo Gen Screening, Inc., 282 F .3d 883, 887 (6th Cir. 2002).

Subject matter jurisdiction in this case is based on diversity of citizenship pursuant 28 U.S.C. § 1332.  In a diversity case, a federal court determines whether personal jurisdiction exists over a nonresident defendant by applying the law of the state in which it sits. Third National Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989).  The Court applies a two-step inquiry to determine whether it may exercise personal jurisdiction over a nonresident defendant: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006).

### A.  Kentucky's Long-Arm Statute

Looking first to Kentucky's long-arm statute, the Kentucky Supreme Court has found that the statute requires a two-prong showing before a court can exercise personal jurisdiction over a nonresident.  Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011).

4

First, the Court must find that a nonresident's conduct or activities fall within one of nine enumerated subsections in KRS § 454.210.   In this case, Plaintiffs maintain that the cause of action falls under either KRS § 454.210(2)(a)(1) or (2), which provide that courts "may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [t]ransacting any business in this Commonwealth . . . ." or "contracting to supply services or goods in this Commonwealth."

If this first prong is satisfied, then the second prong requires the Court to determine if the Plaintiffs' claims arise from the Defendant's actions. See KRS § 454.210(2)(b) ("When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.").   Accordingly, "even when the defendant's conduct and activities fall within one of the enumerated categories, the plaintiff's claim still must 'arise' from that conduct or activity before long-arm jurisdiction exists." Caesars Riverboat, 336 S.W.3d at 56.  This requires a showing of "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]" Id. at 59.  This analysis should be undertaken on a case by case basis, "giving the benefit of the doubt in favor of jurisdiction." Id.

### 1.  Transacting Business in Kentucky

Zumwalt argues that his limited contacts with Kentucky while employed as a sales representative with Russell Brands does not satisfy KRS § 454.210(2)(a)(1) which provides that personal jurisdiction is proper as to a claim arising from a person's transacting any business in Kentucky.  Zumwalt represents that in the five years that he was employed by Russell Brands he never worked as a salesman in Kentucky, never made a single sales call to any potential customer in Kentucky, and has never sold any Russell Brands' merchandise in Kentucky.

(Zumwalt Aff. ¶¶ 6, 10.)  Similarly, Zumwalt avers that he has not done any work in Kentucky nor does he anticipate doing any work in Kentucky for his new employer, BSN Sports, where he has been employed since September 28, 2015.  Id. at ¶¶ 11, 13-14.  During Zumwalt's employment with Russell Brands, his immediate supervisor lived and worked in either Tennessee or Arkansas – not Kentucky.  Further, Zumwalt maintains that the non-compete agreement does not contain Zumwalt's consent to jurisdiction in Kentucky or a choice of venue in Kentucky.

In response, Plaintiffs contend that personal jurisdiction over Zumwalt is appropriate under KRS § 454.210(2)(a)(1). (Compl. ¶ 6.)  The facts alleged in Plaintiffs' complaint to support his transacting business in Kentucky are: (i) Zumwalt's attendance at multi-day sales meetings at Russell Brands headquarters in Bowling Green, Kentucky in May 2010, October 2010, February 2011, May 2011, October 2011, February 2012, May 2012, October 2012, February 2013, May 2013, October 2013, May 2014, October 2014, and May 2015; (ii)  his attendance at Sales Council meetings at Russell Brands headquarters in Bowling Green, Kentucky for three days on three separate occasions between 2013 and 2015; (iii) procurement of sensitive and proprietary information concerning Fruit of the Loom and Russell Brands, including customer lists and contact information, account information, sales figures, merchandising and sales strategies, product pricing, and sales practices and policies from sources at Russell Brands headquarters in Bowling Green; (iv) reporting to a regional Director of Sales who was located in Arkansas and who ultimately reported to the Vice President of Sales located in Bowling Green; (v) depending on personnel in Bowling Green, Kentucky to perform administrative functions supporting his day-to-day work as a salesman for Russell Brands; and (vi) maintaining regular electronic and telephone communications with Russell Brands

headquarters in Bowling Green, Kentucky.  Id. at ¶ 13-19.

Based on Plaintiffs' factual allegations, the Court believes that Plaintiffs made a prima facie showing that Zumwalt "transacted business" in Kentucky, thus satisfying the first prong of Kentucky's long-arm statute.  The alleged facts show that from April 2010 through September 2015, Zumwalt was a sales representative for Russell Brands, a Kentucky-based company.  As a regular part of his job duties, Zumwalt transmitted customer orders to Russell Brands headquarters in Kentucky; he received direction and assistance from sales personnel at Russell Brands headquarters in Kentucky; he received marketing materials and product information from and in Kentucky; he received customer lists and contacts for his territory in Kentucky; he transmitted customer orders using his company-issued electronic device to Russell Brand headquarters in Kentucky; he relied upon Russell personnel in Kentucky to provide administrative functions relating to accounting and payroll, human resources, and customer service; he submitted reimbursements and reports for expenses for customer meals, entertainment, and travel to Russell Brands headquarters in Kentucky; and he maintained frequent communications by email and telephone with Russell Brand personnel in Kentucky. (Reber Decl; Davis Decl.)

Significantly, during his five-year employment with Russell Brands, Zumwalt traveled to Kentucky 14 times for three-day national sales meetings and three more times for multi-day Sales Council meetings.  The national sales meetings included not only continuing education and training components, but also included information regarding which products Russell Brands intended to take to market, the marketing plan and pricing for those products, and overall sales goals of the company. (Reber Decl. ¶ 17.)   At the meetings of the Sales Council (a group comprised of the three regional sales directors plus two to three sales representatives from each

region), corporate executives discussed the market strategy for the next year, new products and pricing, and Russell's plan to compete with other products and manufacturers in the market. (Reber Decl. ¶ 19.)  Zumwalt was asked to and consented to participate in 2013 and 2014.  When a vacancy on the Sales Council arose in 2015, Zumwalt volunteered to fill the vacancy.  He traveled to Kentucky for a three-day Sales Council meeting in late August/early September 2015, only two weeks before he resigned from the company. (Reber Decl. ¶ 18.)  As noted above, at both the national sales meeting and especially in the Sales Council meetings that he attended in Kentucky, Zumwalt obtained significant confidential information from Fruit of the Loom and Russell Brands. (Reber Decl. ¶¶ 17, 19-20.)  Zumwalt correctly points out that Plaintiffs did not assert a claim against Zumwalt for breach of the confidentially provision in the Agreement. However, Zumwalt's procurement of confidential information including customer lists, product information, and marketing information from Fruit of the Loom and Russell Brands relate to Plaintiffs' claims for breach of the non-competition and the non-solicitation provisions of the Agreement.

Furthermore, contrary to Zumwalt's argument, calling on customers in Oklahoma was not the full extent of his business activities as a sales representative for Russell Brands.  As reflected in the record, Zumwalt was engaged in work for Russell Brands when he attended both national sales meetings and Sales Council meetings, and he was reimbursed by Russell for his travel.   According to Kevin Reber, Vice President of Sales for Russell Athletic, one of Zumwalt's "duties as a sales representative was to attend, several times each year, 3-day national sales meetings in Kentucky." (Reber Decl. ¶ 17.) In contrast to the cases relied upon by Defendant, Zumwalt did not have limited communications or contacts with Kentucky; instead, Zumwalt traveled to Kentucky as part of his job at least 17 times in a five-year period.  These

contacts cannot be characterized as limited and passive as Defendant attempts to do. Thus, Zumwalt's contacts with Kentucky were part of Zumwalt's ongoing business activities with Russell Brands. See Rickett v. Smith, 2014 WL 5520626, *3 (W.D. Ky. Oct. 31, 2014); Production Group International, Inc. v. Goldman, 337 F. Supp. 2d 788, 793-97 (E.D. Va. 2004). Viewing these facts in a light most favorable to Plaintiff, the Court concludes that Zumwalt did transact business under KRS § 454.210(2)(a)(1). Because the Court finds KRS 454.210(2)(a)(1) applies, there is no reason to determine whether KRS 454.210(2)(a)(2) is relevant.  Therefore, the Court will now consider whether such conduct gave rise to the underlying claim of negligence.

### 2.  Arising from

Having satisfied the first prong, the second prong requires the Court to determine if the Plaintiffs' claims arise from the Defendant's actions. See KRS § 454.210(2)(b) ("When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.").  In Caesars, the Kentucky Supreme Court interpreted the "arising from" requirement in KRS § 454.210 to mean that "'the wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction.'" Bayou City Exploration, Inc. v. Consumer Advocate Services Enterprises, LLC, 2015 WL 4094259, *6 (W.D. Ky. July 7, 2015)(quoting Caesars Riverboat, 336 S.W.3d at 58–59).  In other words, "the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." Caesars Riverboat, 336 S.W.3d at 58–59.  There must be "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." Id.

In the present case, Zumwalt accepted employment as a sales representative with Russell Brands, a Kentucky based company.  Not only did Zumwalt's job entail sales of Russell Brands' products in Oklahoma and Kansas, but also involved extensive training at the company's headquarters in Bowling Green, Kentucky.  In fact, as discussed above, over a five-year period, Zumwalt was required to attend 14 national sales meetings and voluntarily attended three Sales Council meetings.  In the course and scope of his employment with Russell Brands, Zumwalt signed the Trade Secrets and Non-Competition Agreement in which he agreed not to compete or solicit customers if he left employment in exchange for participation in the Sales Incentive Program offered by Fruit of the Loom.  The Agreement was designed to protect Russell Brands' past and ongoing investments in the education and training of their sales staff and protect the value of the Fruit of the Loom and Russell Brands' confidential information, including customer lists and contact information, account information, sales figures, merchandising and sales strategies, product pricing, and sales practices and policies. (Davis Decl. ¶¶ 9-11.)  Zumwalt acquired both educational and proprietary information during his attendance at national sales meetings and Sales Council meeting in Kentucky.  The causes of action arise out of Zumwalt's business relationship with Russell Brands and his alleged breach of the Trade Secrets and Non-Competition Agreement.  Thus, the Court finds that a "reasonable and direct nexus" between the wrongful acts alleged in the complaint and the statutory predicate exists.

Taking the pleadings in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs' claims arise out of Zumwalt's transacting business in Kentucky.

### B.  Due Process

After finding that Kentucky authorizes jurisdiction, the Court must determine whether the exercise of personal jurisdiction conforms with due process. "The relevant inquiry is whether the

facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The Sixth Circuit has identified three criteria for determining whether specific in personam jurisdiction may be exercised.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

Under the first prong of the Southern Machine test, Plaintiffs must establish that Zumwalt purposefully availed himself of the privilege of acting in Kentucky or causing consequences in Kentucky.  In determining whether a nonresident defendant has purposefully availed himself of the benefits and protections of the forum state for purposes of personal jurisdiction, no single factor is dispositive. See Gateway Press, Inc. v. LeeJay, Inc., 993 F. Supp. 578, 581 (W.D. Ky. 1997). "Rather, the Court's conclusion will emerge from a careful evaluation of all of the facts and circumstances of the parties' business relationship taken as a whole." Id. Jurisdiction is proper under the purposeful availment requirement "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  Moreover, the defendant's conduct and connection with the forum must be of a character that he or she should reasonably anticipate being haled into court there. Id. at 474.  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts' . . . or of the 'unilateral activity of another party or third person.'" Id. at 475 (internal citations omitted).  "The emphasis in the purposeful availment inquiry is whether the defendant has engaged in 'some overt actions connecting the defendant with the forum state.'" See also Bridgeport Music, Inc. v. Still N the Water Pub, 327 F.3d 472, 478 (6th Cir. 2003)(quoting Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1274 (6th Cir. 1998)).

The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1300 (6th Cir. 1989) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980); Hanson v. Denckla, 357 U.S. 235, 253 (1958); Burger King, 471 U.S. at 473). For a personal jurisdiction determination in the context of an employment contract dispute, "matters such as contract negotiations, contemplated future consequences of the employment agreement, the terms of the employment contract and the parties' course of dealing will be considered." United Radio, Inc. v. Wagner, 448 F. Supp. 2d 839, 841 (E.D. Ky. 2006) (citing Conti v. Pneumatic Products Corp., 977 F.2d 978, 982 (6th Cir. 1992)).

In this case, the parties' business relationship bears a substantial connection with Kentucky. As discussed above, Zumwalt entered into a business relationship and contract with Russell Brands, a Kentucky-based company.  Zumwalt was employed by Russell Brands for more than five years.  He was physically present in Kentucky on at least 17 separate occasions in connection with his employment for both national sales meetings and Sales Council meetings, where he obtained training and confidential information of Fruit of the Loom and Russell Brands.  He relied upon staff at the Kentucky headquarters of Russell Brands to perform

administrative functions.   He sent customer orders and expense reports to Kentucky for processing, and he maintained frequent communications by email and telephone with Russell employees in Kentucky.   He relied on Russell Brands personnel in Kentucky to provide administrative functions relating to accounting and payroll, human resources, and customer service.   He received customer lists and marketing material in Kentucky to take back to his Oklahoma/Kansas territory. (Zumwalt Aff. ¶ 4.)   Acquisition of information both confidential and otherwise was obtained in Kentucky through the Sales Council meetings, one of which occurred two weeks days prior to his resignation from Russell Brands.   Here, Defendant chose to enter into an Agreement that contemplated the continuing contact with the corporation's headquarters in Bowling Green, Kentucky.   As noted by a district court in a similar case, "it is difficult to accept that his involvement with the forum was not free and intentional." Krauss-Maffei Corp. v. Donovan, 2008 WL 108757, *4 (E.D. Ky. Jan. 9, 2008). Moreover, "Defendant's relationship to Kentucky cannot not be described as merely 'passive,' as Defendant has traveled to Kentucky for employment purposes and depended on Kentucky headquarters for administrative support." Id. (citing Hillerich & Bradsby Co. v. Hall, 147 F. Supp. 2d 672, 677 (W.D. Ky. 2001)). See also AlixPartners, LLP v. Brewington, 2015 WL 5273878, *6 (E.D. Mich. Sept. 9, 2015)(citing cases); United Radio, 448 F. Supp. 2d at 841.

Moreover, the Agreement in question was drafted by Fruit of the Loom in Kentucky, and the parties anticipated that the Agreement would result in further conduct in Kentucky, including Zumwalt's access to confidential information and his participation in the Sales Incentive Program.   The Agreement also contained a Kentucky choice-of-law provision.   Although not dispositive, "the choice-of-law provision contained in the parties' agreement is relevant to the personal jurisdiction issue." Krauss-Maffei Corp. v. Donovan, 2008 WL 108757, *4 (E.D. Ky.

Jan. 9, 2008)(citing LAK, 885 F.2d at 1295.).  "Though standing alone not determinative, a choice-of-law provision supports the inference that Defendant intended to avail himself of the benefits and protections of Kentucky law. . . . Having elected to invoke the benefits of Kentucky law for resolving disputes under the contract, there is obviously much to be said in favor of letting such disputes be resolved in [that state]." Id. (internal quotations and citations omitted). In other words, the Kentucky choice-of-law provision contained in the Agreement reinforces Zumwalt's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." United Radio, 448 F. Supp. 2d at 843.  See Burger King, 471 U.S. at 482 (choice of law provisions should not be ignored in considering whether a defendant has "purposefully invoked the benefits and protections of a State's law" for jurisdictional purposes).

Based on a consideration of the facts of this case, the Court finds that Zumwalt had connections with Kentucky and availed himself of the forum. Thus, the first prong of Southern Machine is satisfied.

The second and third prongs under the Southern Machine test are less stringent.  See Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 553-55 (6th Cir. 2007).  The second prong of the Southern Machine test states that "the cause of action must arise from the defendant's activities" in the forum. Southern Machine, 401 F.2d at 381. For the second prong, the Court must simply determine "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, . . . or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state[.]"  Air Products, 503 F.3d at 553 (quoting Youn v. Track, Inc., 324 F.3d 409, 419 (6th Cir. 2003)) (internal citations omitted). "'The activities do not have to directly result in the cause of action, they must only 'have a substantial connection with the defendant's in-state activities.'"  Krauss-Maffei Corp., 2008 WL

108757, *6 (quoting United Radio, 448 F.Supp.2d at 842).

 As discussed in more detail above, in the present case, Zumwalt entered into a business relationship with a Kentucky company; engaged in required training exercises and meetings within Kentucky; received customer lists and marketing materials in Kentucky to take back and use in his territory in Oklahoma and Kansas; maintained regular communications with Russell Brands' personnel in Kentucky; and entered into an agreement not to compete or solicit customers if he left employment with Russell Brands in exchange for participation in the Sales Incentive Program.  The Court finds that Zumwalt's ongoing contacts with Russell Brands' personnel in Kentucky and his participation in sales meetings and Sales Council meetings in Kentucky where he procured confidential information including customer lists are sufficient to establish a "substantial connection" with Plaintiffs' claims that Zumwalt breached the Agreement. Thus, this requirement of specific jurisdiction is satisfied.  See Krauss-Maffei Corp., 2008 WL 108757, *6; United Radio, 448 F.Supp.2d at 842.

 Finally, under the third requirement of the Southern Machine test, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Southern Machine, 401 F.2d at 381. "[W]here, as here, the first two criterion are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" Air Products, 503 F.3d at 554 (quoting Theunissen v. Matthews, 935 F.2d 1454, 1461 (6th Cir.1991)).  Under the third prong, several factors are often considered, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." Id. at 554-55 (citation omitted).

In this case, Zumwalt's contacts with Kentucky are substantial enough to make the exercise of personal jurisdiction reasonable.  Zumwalt's inconvenience in litigating the matter in Kentucky does not overcome the inference of reasonableness.  Zumwalt was employed by Russell Brands for five years and during that period of time he traveled at least 17 times to Kentucky.  Zumwalt hoped to profit financially from his employment with Russell Brands.  By signing the Agreement, he was eligible to participate in the Sales Incentive Program.   "[I]t is hard to believe Defendant did not reasonably foresee that he might be haled into Kentucky Court based on the employment arrangement contemplated in the parties' agreement and the choice-of-law provision therein."  Krauss-Maffei Corp., 2008 WL 108757, *6.  See also United Radio, 448 F. Supp. 2d at 843.

Based on the analysis of the facts and the relevant case law, the Court finds personal jurisdiction proper.

### III.  MOTION TO TRANSFER

In the alternative, Defendant moves to transfer the case to the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404.  Zumwalt argues that the totality of the circumstances and common sense indicate that Oklahoma is the most appropriate forum for this litigation.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Under this section, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 536- 537 (6th Cir. 2002). The district court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other

public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moses v. Business Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir. 1991); Kerobo, 285 F.3d at 537–538; Travelers Property Casualty Co. of America v. Centimark, Corp., 2005 WL 1038842, *3 (S.D. Ohio May 3, 2005). The Sixth Circuit suggests that relevant factors to be considered include: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based upon the totality of the circumstances." National City Bank v. Breeden, 2009 WL 3514587, *1 (W.D. Ky. Oct. 29, 2009)(citing Kattula v. Jade, 2007 WL 1695669 (W.D. Ky. June 8, 2007); Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc., 406 F. Supp. 2d 751 (E.D. Ky. 2005). See also Reese v. CNH America LLC, 574 F.3d 315, 320 (6th Cir. 2009)).  The moving party generally has the burden of proving that transfer is appropriate and the plaintiff's choice of forum is entitled to considerable weight. Travelers Property Casualty, 2005 WL 1038842, *4 (S.D. Ohio May 3, 2005); Bacik v. Peek, 888 F. Supp. 1405, 1414 (N.D. Ohio May 14, 1993).

### A. Convenience of the Parties, Convenience of Witnesses, and Access to Proof

Plaintiffs are headquartered in Kentucky.  Plaintiffs argue that they would incur great expense for themselves and counsel to travel to Oklahoma for depositions, hearings, and a trial. Zumwalt, as the key witness for the defense, lives and works in Oklahoma and avers that litigating in Kentucky would be inconvenient for him.  Clearly, the Plaintiffs would be inconvenienced by litigating in Oklahoma, and Defendant likewise would be inconvenienced by

litigating in Kentucky. Generally, "[a] transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." Wayne County Employees' Retirement Sys. v. MGIC Inv. Corp., 604 F. Supp. 2d 969, 975 (E.D. Mich. 2009) (citing Evans Tempcon, Inc. v. Index Indus., Inc., 778 F.Supp. 371, 377 (W.D. Mich. 1990)).

To establish their claims, Plaintiffs will rely on documents and witnesses located in Kentucky. Two likely witnesses, Russell Brands' Senior Vice-President and General Manager Robert Davis and Vice President of Sales Kevin Reber have stated in their Declarations that participating in hearings and a trial in Oklahoma would be inconvenient for them. Defendant argues that any customers in Oklahoma and Kansas that would need potentially to testify regarding sales or solicitations made by Zumwalt would be based in Oklahoma or Kansas, and not in Kentucky. See Global Fitness Holdings, LLC v. Federal Recovery Acceptance, Inc., 2013 WL 1187009, *4 (E.D. Ky. Mar. 20, 2013) (concluding that the convenience of party witnesses did not favor transfer because "neither forum will be convenient for all party witnesses"). The Court believes that these three factors favor neither party.

**B.  Locus of Operative Fact**

Here, the parties dispute where the operative facts giving rise to the suit occurred. Plaintiffs maintain that the operative facts are centered in Kentucky. Specifically Plaintiffs cite Zumwalt's employment with Russell Brands; Russell Brands' training and disclosure of confidential information, including customer lists, with Zumwalt in national sales meetings and Sales Council meetings; and the harm to Russell Brand resulting from Zumwalt's breach of the Agreement are centered in Kentucky. In contrast, Zumwalt argues that the events that gave rise to this suit occurred in Oklahoma. Specifically, Zumwalt contends that he had no responsibility beyond Oklahoma and parts of Kansas, and therefore, the locus of operative facts is Oklahoma.

A review of the record reveals that operative facts occurred in both the Western District of Kentucky and the Northern District of Oklahoma. Accordingly, the Court finds that this factor favors neither party.

### C.  Availability of Process to Compel Attendance of Unwilling Witnesses

In considering the availability of process to compel attendance of an unwilling witness, this factor favors neither party, as compelling the attendance in either state of unwilling witnesses from the other state is equally possible. Functional Pathways of Tenn., LLC v. Wilson Senior Care, Inc., 866 F. Supp. 2d 918 (E.D. Tenn. 2012).

### D.  Relative Means of the Parties

Zumwalt states that he would be highly inconvenienced and burdened in terms of both time and money by having to litigate in Kentucky. (Zumwalt Aff. ¶15.) Zumwalt points out that Plaintiffs are global companies with employees all around the world, and Zumwalt is an individual who works in Oklahoma and Kansas. While a corporate plaintiff would appear to have more financial resources than an individual defendant, Zumwalt has not presented any documentation of his financial resources that would suggest that he is unable to litigate this action in Kentucky. Rickett, 2014 WL 5520626, *6 ("Defendants fail to supply financial information that would justify transferring to Florida.").

### E.  Forum Familiar with Governing Law

Pursuant to the express choice-of-law provision in the Agreement, this dispute is governed by Kentucky law. Thus, this Court is more familiar with the laws of Kentucky compared to the Norther District of Oklahoma. Therefore, this factor weighs in favor of litigating this action in Kentucky.

### F.  Plaintiffs' Choice of Forum and Interests of Justice

The weight accorded a Plaintiff's choice of forum plainly favors Fruit of the Loom and Russell Brands.  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Reese, 574 F.3d at 320 (citations omitted).  Similarly, the interests of justice based on the totality of the circumstance weighs heavily in favor of retaining this matter in Kentucky.  In support of his argument that the interest of justice favors the transfer of this matter to Oklahoma, Zumwalt maintains that this lawsuit is a blatant attempt to forum shop by the Plaintiffs in an attempt to circumvent clear Oklahoma law and public policy. According to Defendant, in Oklahoma non-compete agreements are statutorily void, contrary to public policy, and unenforceable.  Thus, Defendant maintains that the non-compete agreement would not be enforced in Oklahoma – even with the Kentucky choice of law provision.  See Herchman v. Sun Med., Inc., 751 F. Supp. 942, 945 (N.D. Okla. 1990).  It is undisputed that in exchange for participation in the Sales Incentive Program with Fruit of the Loom, Zumwalt signed a non-compete agreement that contained a Kentucky choice of law provision.  Given the admitted likelihood that Oklahoma courts will not adhere to Kentucky law in the present case despite the choice of law provision in the Agreement, the Court finds that the interest of justice weighs in favor of retaining jurisdiction in Kentucky.

Accordingly, balancing the above factors, the Court concludes that transfer of this matter to the Northern District of Oklahoma is not appropriate.

### IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motion by Defendant, Ruston B. Zumwalt, to dismiss the Verified Complaint filed by Plaintiffs, Fruit of the Loom, Inc. and Russell Brands, LLC, for lack of personal jurisdiction, or alternatively, a motion to transfer

the action to the United States District Court for the Northern District of Oklahoma [DN 20] is

**DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

November 19, 2015

cc: counsel of record