UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:15CV-131-JHM

FRUIT OF THE LOOM, INC., ET AL.                                                PLAINTIFFS

V.

RUSTON B. ZUMWALT                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Plaintiffs' motion for preliminary injunction seeking to preliminarily enjoin Defendant, Ruston B. Zumwalt, from (1) working or providing services for a competitor of Defendants "in any area, position or capacity in which [he] gained particular knowledge and experience during his employ" with Russell Brands before the expiration of 12 months after termination of his employment and (2) from soliciting or participating in soliciting any covered customer of Fruit of the Loom or Russell Brands for a period of 12 months after termination of his employment. [DN 8]  The Defendant filed a response, and the Plaintiffs filed a reply containing a submission of authorities in support of the motion for preliminary injunction.  The Court held a preliminary injunction hearing on November 23, 2015.  Fully briefed and argued, this matter is ripe for decision.

**I.  BACKGROUND**

From April 2010 through September 15, 2015, Plaintiff, Ruston B. Zumwalt, was employed as a salesman by Russell Brands, LLC, an operating company of Fruit of the Loom. During his tenure as salesman, Zumwalt sold Russell Brands' athletic and Bike products in Oklahoma and eastern Kansas.  Zumwalt was Russell Brands' sole representative in the territory.

On May 27, 2015, Zumwalt signed a Trade Secrets and Non-Competition Agreement (the "Agreement"). The Agreement was generated in Kentucky and signed by Zumwalt in Oklahoma. The parties to the Agreement were Zumwalt and Fruit of the Loom. In Section 7 of the Agreement, the parties stipulated that the Agreement "shall be construed according to the laws of the Commonwealth of Kentucky, without regard for its conflicts of laws principles." Zumwalt signed the Agreement in exchange for participation in Fruit of the Loom's 2015 Sales Incentive Program which awarded "bonus" compensation to Fruit of the Loom sales personnel based on their performance during the year. In Section 11 of the Agreement, Zumwalt acknowledged that participation in the 2015 Sales Incentive Program was "good and valid consideration" for his promises in the Agreement, "whether or not a bonus [was] actually earned under the Program."

In Section 1 of the Agreement, Zumwalt promised during and after his employment "not to disclose Confidential Information or Trade Secrets to third parties, or to use Confidential Information or Trade Secrets on behalf of third parties." In Section 5(a)(i) of the Agreement, Zumwalt promised that for a period of 12 months after termination of his employment, he would not solicit or participate in soliciting any Covered Customer, directly or indirectly, to purchase products from a competitor, or to decrease its level of business with Fruit of the Loom or Russell Brands. Further, in Section 5(a)(ii) of the Agreement, Zumwalt promised that for a period of 12 months after termination of employment, he would not directly or indirectly work or provide services for a competitor in any area, position or capacity in which he gained particular knowledge and experience during his employ with Russell Brands.

On September 14, 2015, Zumwalt accepted a position with BSN Sports as a Branch Sales Manager. On September 15, 2015, Zumwalt announced his intent to resign his position with

Russell Brands and go to work for BSN Sports, a competitor of Fruit of the Loom. Zumwalt's attorney sent Fruit of the Loom a letter stating that the non-competition provision in the Agreement is "void and cannot be enforced" under Oklahoma law. The letter also informed Fruit of the Loom that Zumwalt "[w]ould not use or disclose any confidential or trade secret information" to any third party. On September 28, 2015, Zumwalt began working for BSN Sports.

Plaintiffs filed suit on October 23, 2015, alleging breach of the non-competition and the non-solicitation provisions and seeking injunctive relief based on both provisions. Plaintiffs also filed a motion for preliminary injunction.

## II. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy that is generally used to preserve the status quo between the parties pending a final determination of the merits of the action. In determining whether to issue a preliminary injunction, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)). It is unnecessary for the Court to make findings regarding each factor if "fewer are dispositive of the issue." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) (citing United States v. School Dist. of Ferndale, Mich., 577 F.2d 1339, 1352 (6th Cir. 1978)). "The party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success." Michigan Catholic Conference & Catholic

Family Servs. v. Burwell, 755 F.3d 372, 382 (6th Cir. 2014) (quoting McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012)) (internal quotation marks omitted).

### III. DISCUSSION

**A. Likelihood of Success on the Merits**

The Court must first consider whether the Plaintiffs have demonstrated a strong likelihood of success on the merits. Tenke, 511 F.3d at 543. To satisfy this burden, a plaintiff must show "more than a mere possibility of success" on the merits; he must raise "questions . . . so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id. (quotations omitted).

**1. Choice of Law**

Initially, Zumwalt argues that Plaintiffs are unlikely to succeed on the merits of their claim for breach of the non-compete and non-solicitation provisions because despite the existence of a Kentucky choice-of-law provision in the Agreement, Oklahoma law applies and these claims are not enforceable against Zumwalt.

As a federal court sitting in diversity, the Court applies the substantive law of the state in which it sits, including the state's choice-of-law rules. Stryker v. Ridgeway, 2015 WL 5682317, *4 (W.D. Mich. Sept. 21, 2015). The Sixth Circuit in Wallace Hardware Co., Inc. v. Abrams held that Kentucky courts would apply Restatement (Second) of Conflict of Laws § 187 in a breach of contract case. Wallace Hardware Co., Inc. v. Abrams, 223 F.3d 382, 391 (6th Cir. 2000). Under § 187, the parties' choice of law should be honored unless (1) "'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,'" or (2) "'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest.'" Vesey Air,

4

LLC v. Mayberry Aviation, LLC, 2010 WL 716223, *3 (W.D. Ky. Feb. 24, 2010)(quoting Wallace Hardware, 223 F.3d at 398 (citing Restatement (Second) of Conflict of Laws § 187)).

Subsection (1) of § 187 does not apply because Kentucky has a substantial relationship to the parties and the Agreement because Russell Brands and Fruit of the Loom are located in Kentucky and "the parties had a reasonable basis for choosing [Kentucky] law, namely, to ensure that [Plaintiffs] will have some certainty in defending its rights in suits with its employees all over the country." Stryker, 2015 WL 5682317, *5; see also Kelly Services, Inc. v. Marzullo, 591 F. Supp. 2d 924, 938 (E.D. Mich. 2008).

Under subsection (2), while the applicable law of Kentucky is contrary to Oklahoma policy regarding non-compete clauses, Oklahoma does not have a materially greater interest than Kentucky in determining the effect of the breach of the non-compete agreement. Zumwalt contends that Oklahoma has a materially greater interest than Kentucky in the non-compete agreement because Zumwalt is a citizen of Oklahoma, Zumwalt's sales territory was limited to Oklahoma and Kansas, Oklahoma is the state of his current employment, Oklahoma is the state that receives the income taxes for work performed by Zumwalt, and the case involves the ability of an Oklahoma citizen to work in Oklahoma for another employer doing business in Oklahoma. Although Zumwalt has identified substantial interests on the part of Oklahoma, he ignores the fact that Kentucky also has a significant interest in applying its law to the breach of contract issue. See Stryker, 2015 WL 5682317, *6. Fruit of the Loom and Russell Brands have their principal places of business in Kentucky. "Because the employment relationship was rooted in [Kentucky], the harm would be felt in [Kentucky] by a [Kentucky] company." Id. (citing Marzullo, 591 F. Supp. 2d at 938). Moreover, as discussed above, Kentucky's public policy favors the enforcement of contractual choice-of-law provisions. Wallace Hardware, 223 F.3d at

398. Furthermore, Zumwalt's geographical contacts with Oklahoma do not give Oklahoma a "materially greater" interest than Kentucky which has a substantial interest "in enforcing this voluntarily negotiated contract clause that explicitly designates [Kentucky] law to govern." Coface Collections North American, Inc. v. Newton, 430 Fed. Appx. 162, 168 (3d Cir. 2011). The Court cannot say that Oklahoma has a materially greater interest in the application of its law to this dispute. See Stryker, 2015 WL 5682317, *6. At best, Oklahoma and Kentucky "have relatively equal interests in the application of their respective laws, and that is not sufficient to defeat the presumption that [Kentucky] law applies." Id. Thus, the Court declines to apply Oklahoma law to Zumwalt's breach of contract claim.

### 2. Non-Compete Agreement

In the non-compete provision of the Agreement, Zumwalt agreed that he would not compete with Fruit of the Loom or other Fruit of the Loom operating companies for a period of 12 months after termination of his employment with Russell Brands. (Agreement § 5(a)(ii).) Thus, Zumwalt expressly agreed that he would not "work or provide services" for BSN Sports, in any area, position, or capacity in which he gained knowledge or experience at Russell Brands, for 12 months after termination of his employment with Russell Brands. Further, Zumwalt does not dispute that he began working as a Branch Sales Manager BSN Sports, one of the competitors specifically identified in the Agreement within weeks of his resignation from Russell Brands. Despite Zumwalt's testimony at the preliminary injunction hearing, the Court finds that a Branch Sales Manager at BSN Sports qualifies as a position that is prohibited under the Agreement because Zumwalt is providing services for BSN Sports in an area in which Zumwalt gained knowledge or experience at Russell Brands.

Thus, given these facts, Plaintiffs can succeed on the merits of their claim for breach of

the non-compete provision in the Agreement if the provision is valid and enforceable. Under Kentucky law, covenants not to compete "'are valid and enforceable if the terms are reasonable in light of the surrounding circumstances.'" ISCO Industries, Inc. v. Shugart, 2014 WL 2218116, *3 (W.D. Ky. May 28, 2014)(quoting Crowell v. Woodruff, 245 S.W.2d 447, 449 (Ky. 1951)). To be enforceable, "the restraint must be 'no greater than reasonably necessary to' prevent unfair competition by the employee or his subsequent employer." Id. "'[T]he test of reasonableness is whether the restraint, considering the particular situation and circumstances, is such only as to afford fair protection to the legitimate interests of the [employer] and not so extensive as to interfere with the interests of the public.'" Id. (citing Stiles v. Reda, 228 S.W.2d 455, 456 (Ky. 1950)).

In determining whether the covenants are valid and enforceable, "courts consider: (a) the 'nature of the business or profession and employment,' including the character of the service that is performed by the particular employee; (b) the duration of the restriction; and (c) the scope and/or territorial extent of the restriction." ISCO Industries, 2014 WL 2218116, *3. Zumwalt served as the only salesperson in Oklahoma and eastern Kansas. He had access to confidential information relating to Russell Brands' products, pricing, and sales strategies, as well as customer lists. Additionally, the Agreement's restriction on competition was limited in duration to 12 months—a shorter duration than Kentucky courts have found reasonable in other cases. See Carrier Vibrating Equipment, Inc. v. Andritz Separation, Inc., 2009 WL 5103593, *3 (W.D. Ky. Dec. 17, 2009).[1]

---

[1] See also ISCO Indus., 2014 WL 2218116, *3(citing Gardner Denver Drum LLC v. Goodier, 2006 WL 1005161, *2, *8 (W.D. Ky. Apr.14, 2006) (finding reasonable three-year prohibition against employee working with any business that competes with former employer in the United States); Ceresia v. Mitchell, 242 S.W.2d 359, 361, 364 (Ky. 1951) (affirming trial court's reformation of noncompete agreement preventing a former business owner from competing against new business owner for a period of ten years in the local area); Hodges v. Todd, 698 S.W.2d 317, 318–20 (Ky. Ct. App. 1985) (finding trial court had authority to determine appropriate geographic scope for a

Furthermore, the broad geographic scope of the restriction in the Agreement "does not make it unreasonable *per se*." Gardner Denver Drum LLC v. Goodier, 2006 WL 1005161, *8 (W.D. Ky. Apr. 14, 2006). Rather, the restriction "must be assessed in light of the relevant circumstances." Id. The Agreement forbids Zumwalt to go to work for any of the 9 specific competitors for a 12-month period; thus the scope of the restriction is limited by the scope of those competitors' business activities. Finally, Zumwalt has not challenged the validity or enforceability of the non-compete provision under Kentucky law.

For these reasons, the Court finds that the Plaintiffs have demonstrated a strong likelihood of success on the merits of their claim for breach of the non-compete provision in the Agreement.

### 3. Non-Solicitation Agreement

In the Non-Solicitation provision of the Agreement, Zumwalt agreed not to solicit or participate in soliciting Fruit of the Loom and Russell Brands customers, directly or indirectly, to buy products from BSN Sports, or to decrease its level of business with Fruit of the Loom or Russell Brands, for 12 months after termination of his employment with Russell Brands. Kentucky Courts routinely enforce non-solicitation provisions such as the provision in the Agreement. ISCO Indus., 2014 WL 2218116, *3. As Branch Sales Manager for BSN Sports, Zumwalt is in a position at the company to train and manage sales personnel that are actively soliciting Fruit of the Loom and Russell Brands' customers on a daily basis. (Plaintiffs' Exhibit 50.) Zumwalt receives sales information and figures, as well as customer information, related to the sale of apparel and equipment on a weekly/monthly basis. Accordingly, as Branch Sales Manager with BSN Sports, Zumwalt is at the very least indirectly participating in soliciting Fruit

---

five-year prohibition on former business owner competing in business of remanufacturing of pickup trucks and trailers, implicitly holding the a five-year temporal limitation was reasonable).

of the Loom and Russell Brands customers. Despite Zumwalt's representations at the hearing that he did not participate in discussions regarding sales of apparel and did not participate in the training of BSN Sports sales staff, the email correspondence from BSN Sports management reflect a different view of Zumwalt's current role in the company. (Plaintiffs' Exhibits 67A, 67B, 67C, 67D, 67E, 67F, 67G, 67I.) Thus, in light of this evidence, the Court finds that Plaintiffs have demonstrated a strong likelihood of success on the merits of their claim for breach of the non-solicitation provision in the Agreement.

### B. Irreparable Harm

The next factor the Court must consider in deciding whether to grant a preliminary injunction is whether Plaintiffs will suffer irreparable injury absent the injunction. Tenke, 511 F.3d at 550. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." Id. at 550 (quoting Overstreet v. Lexington–Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir. 2002)) (internal quotation marks omitted). "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." Tenke, 511 F.3d at 550 (quoting Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992)).

In the Agreement, Zumwalt acknowledged that any "breach or threatened breach of [the] Agreement" by him would result in "irreparable injury which will not be quantifiable in dollar terms." (Agreement § 6.) Likewise, the Sixth Circuit provides that "[t]he likely interference with customer relationships resulting from the breach of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate." Tenke, 511 F.3d at 550. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." Basicomputer Corp., 973 F.2d at 512. See also Genesis

Med. Imaging, 2008 WL 4180263, *9 (E.D. Ky. Sept. 5, 2008); Stryker Corp. v. Bruty, 2013 WL 1962391, *6 (W.D. Mich. May 10, 2013); Kelly Services, Inc. v. Noretto, 495 F. Supp. 2d 645 (E.D. Mich. 2007).

Furthermore, in support of their irreparable injury argument, Plaintiffs tendered evidence that on October 7, 2015, Zumwalt emailed Danny McCuin, his boss at BSN Sports, a list of the schools that purchase Russell Brands products. (Exhibit 67I.) Essentially, it would appear at this stage of the litigation that based on the information obtained during his employment with Russell Brands, Zumwalt provided BSN Sports – a competitor of Russell Brands -- a list of schools that purchased Russell Brands apparel in violation of the confidentiality provisions of the Agreement. Finally, despite Zumwalt's argument to the contrary, "[i]t is entirely unreasonable to expect [Zumwalt] to work for a direct competitor in a position similar to that which he held with [Russell Brands], and forego the use of the intimate knowledge of [Russell Brands'] business operations." Noretto, 495 F. Supp. 2d at 659.

For these reasons, the Court finds that Plaintiffs have put forth sufficient evidence that they will suffer irreparable harm absent a preliminary injunction.

**C. Substantial Harm to Others**

The third factor in determining whether to issue a preliminary injunction is "whether . . . the injunction would cause substantial harm to others." Tenke, 511 F.3d at 550–51. In the instant case, there is no indication that a preliminary injunction enforcing the terms of the parties' Agreement would cause any harm to third parties. In considering the balance of hardships between the parties, Zumwalt testified that a preliminary injunction will cause substantial harm to him by depriving him of an income. However, Zumwalt signed the non-competition agreement; and therefore, any harm to Zumwalt was foreseeable and avoidable.

### D. Public Interest

The final factor the Court must evaluate is "whether the public interest would be served by the issuance of the injunction." Tenke, 511 F.3d at 551. No public policies appear to be implicated by the issuance of the preliminary injunction in this case other than the general public interest in the enforcement of voluntarily assumed contract obligations. Issuing the preliminary injunction would hold Zumwalt to the terms of the bargain he entered into through the Agreement. Enforcement of contractual duties is in the public interest. Id. Accordingly, the Court finds that this final factor also points toward the issuance of the preliminary injunction

Upon consideration of all of the relevant factors, the Court concludes that Plaintiffs have carried their burden of showing that the requested injunctive relief is warranted.

### E. Bond

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Despite the mandatory language of the rule, "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." Appalachian Regional Healthcare, Inc. v. Coventry Health and Life Ins. Co., 714 F.3d 424, 431 (6th Cir. 2013)(quoting Moltan Co. v. Eagle–Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1995)). The Court will require Plaintiffs to post security in the amount of $95,000.00 for the payment of costs and damages in the event that Zumwalt is found to have been wrongfully enjoined or retrained.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction [DN 8] is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1. Defendant Ruston B. Zumwalt shall not work or provide services for Gildan Activewear Inc., Hanesbrands Inc., Nike Inc., Adidas Group, Inc., Under Armour, Inc., PVH Corp., BSN Sports, Inc., Lifetime Products, Inc., or Wilson Sporting Goods Co., or any of their subsidiaries, affiliated companies, or successors, whether as an independent contractor, adviser or otherwise, in any area, position or capacity in which he gained particular knowledge and experience during his employ with Russell Brands, LLC before the expiration of a period of twelve (12) months after termination of his employment with Russell Brands, LLC; and

2. Defendant Ruston B. Zumwalt shall not solicit or participate in soliciting any retailer, wholesaler, distributor, or other entity which purchased Fruit of the Loom, Inc. or Russell Brands, LLC products during his employ with Russell Brands, LLC, directly or indirectly, to purchase products from Gildan Activewear Inc., Hanesbrands Inc., Nike Inc., Adidas Group, Inc., Under Armour, Inc., PVH Corp., BSN Sports, Inc., Lifetime Products, Inc., or Wilson Sporting Goods Co., or any of their subsidiaries, affiliated companies, or successors, or to decrease its level of business or discontinue doing business with any Fruit of the Loom, Inc. operating company, including Russell Brands, LLC, before the expiration of a period of twelve (12) months after termination of his employment with Russell Brands, LLC.

3. Plaintiffs shall post a bond with the court in the amount of $95,000.00 no later than December 12, 2015, as security for any damages to Defendant as a result of this injunction.

*[Signature: Joseph H. McKinley]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

December 1, 2015

cc: counsel of record